UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
**ANNE CULLEN,**

                    Plaintiff,

         - against -

**COMMISSIONER OF SOCIAL SECURITY,**

                    Defendant.
------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

20-CV-2998 (AMD)

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff appeals from the Social Security Commissioner's decision that she is not disabled for purposes of receiving Supplemental Security Income under Titles II and XVI of the Social Security Act. Before the Court are the parties' cross-motions for judgment on the pleadings. (ECF Nos. 15, 19.) For the reasons that follow, I grant the plaintiff's motion, deny the Commissioner's cross-motion and remand the case for further proceedings.

## BACKGROUND

      On September 13, 2016, the plaintiff applied for Supplementary Security Income benefits ("SSI") based on her history of post-traumatic stress disorder ("PTSD"), depression and anxiety. (Tr. 183-204.) The claim was denied, and on February 1, 2017, the plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 90-101, 104-106.)

      On November 6, 2016, the plaintiff met with psychologist Dr. John Laurence Miller for a one-time consultative examination. (Tr. 393.) Dr. Miller diagnosed the plaintiff with major depressive disorder and a specific learning disorder. (Tr. 396.) He found that "[h]er ability to maintain attention and concentration, relate adequately with others, and deal appropriately with stress is moderately limited," and "[h]er ability to learn new tasks and perform complex tasks

independently is mildly limited." (Tr. 395.) He recommended that the plaintiff continue psychological and psychiatric treatment, and participate in vocational training and rehabilitation. (Tr. 396.)

Psychiatrist Dr. Benjamin Solomon started treating the plaintiff on July 11, 2017. (Tr. 752.) He diagnosed her with major depressive disorder, (Tr. 752), and opined that homelessness and unemployment were stressors that contributed to her psychosocial state. (Tr. 753.) While the plaintiff attempted to "prepare herself for employment," she reported having trouble sleeping. (Tr. 757, 777.) Dr. Solomon noted her "depressed" mood and prescribed her hydroxyzine. (Tr. 779, 782.) The plaintiff reported that the hydroxyzine caused grogginess and memory loss, and that she had feelings of hopelessness despite having some positive social experiences. (Tr. 786-87, 789.) She also feared that she would be unable to secure a job. (Tr. 789.) Dr. Solomon prescribed Gabapentin because of the plaintiff's adverse reactions to the hydroxyzine, (Tr. 799), and noted that the plaintiff's "functional deficits are at least partially due to chronic maladaptive coping mechanisms. Her coping style frequently results in avoidance of taking steps towards meeting stated goals." (Tr. 797.)

During the plaintiff's treatment relationship with Dr. Solomon, her mood fluctuated, sometimes improving and sometimes getting worse. On September 6, 2017, she reported her mood as "okay." (Tr. 803.) But the next week, she felt depressed, and then "more depressed" the subsequent week. (Tr. 803, 811, 820.) During an October 11, 2017 session, the plaintiff reported "greatly enjoying" social interaction, but the next week, explained "she became more depressed yesterday and didn't want to do anything." (Tr. 834-835, 846.) In a psychiatric evaluation dated May 2, 2018, Dr. Solomon wrote that while the plaintiff's condition improved during her treatment, she suffered a depressive relapse in January 2018 because of "difficulty

with housing interviews." (Tr. 512.) In the same report, he noted that plaintiff has a history of "difficulty concentrating, complete social withdrawal, amotivation, [and] poor self-care," among other symptoms. (Tr. 514.)

ALJ John Noel held a hearing on February 26, 2019. The plaintiff, represented by counsel, testified, as did vocational expert Edmond Calandra (the "VE"). (Tr. 42-72.) The plaintiff testified that she could not work because of her mental condition. (Tr. 49.) She had been depressed since December 2018, and her depression was worsening. (Tr. 52.) She had difficulty leaving the house during bouts of depression, could not focus and could only "read for a short time and then [her] mind starts worrying about everything." (Tr. 55-56.) She also had trouble sleeping at night, which worsened her anxiety. (Tr. 52-53.) She struggled with everyday activities, like brushing her teeth and taking a shower regularly. (Tr. 64.)

The ALJ asked the VE about jobs in the national economy for someone "who has the residual functional capacity to perform a full range of work with no exertional limitations but has the following non-exertional limitations: can perform simple, routine tasks, use judgement limited to simple work-related decisions, deal with routine changes in the work setting, have only occasional contact with the public, and not work on a team with coworkers." (Tr. 69.) The VE testified that a person with these limitations could work as a laundry worker, a kitchen helper and a hand packer, and that there are over 3 million of such jobs nationally. (*Id.*) He also stated that all competitive employment opportunities would be eliminated if a person were "off task" for 10 percent of the day or missed work more than once a month, (*id.*), and explained that someone who could not maintain a schedule or be on time consistently for a third of a week would not be able to sustain consistent work. (Tr. 70-71.)

In a decision dated April 24, 2019, the ALJ denied the plaintiff's claim. (Tr. 7-24.) He found that the plaintiff suffered from two severe impairments—anxiety disorder and major depressive disorder. (Tr. 12-13.) However, he concluded that the plaintiff's impairments did not meet the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-15.) He also concluded that the plaintiff had the residual functional capacity ("RFC") to perform a full range of work with some non-exertional limitations. (Tr. 15-19.) In determining the plaintiff's RFC, the ALJ assigned varying weight to the opinions of medical sources. (Tr. 18.) The ALJ gave treating physician Dr. Solomon's opinion only "partial weight," reasoning that the psychiatrist's opinions were based on evidence that was "only partially consistent with the record." (Tr. 17-18.) The ALJ found that "while [Dr. Solomon's] opined 'moderate' limitations are consistent with the record, his more significant 'marked' and out of work limitations are not." (Tr. 18.) The ALJ gave consultative examiner Dr. Miller's opinion "great weight," because "Dr. Miller is an acceptable medical source who is familiar with Social Security policy and had the opportunity to examine the [plaintiff] in person." (Tr. 17.) "Although he was limited to a one-time examination of the claimant, his opinion remains consistent with the record as a whole, which shows no more than moderate limitation . . . ." (*Id.*) The ALJ also considered the opinion of Dr. H. Rozelman, a state agency psychological consultant who did not examine the plaintiff but reviewed her records. (*Id.*) The ALJ credited Dr. Rozelman's opinion that the plaintiff had "moderate limitation in the . . . ability to interact with others," but gave her opinion partial weight; he determined that her "opined mild limitations in concentration and adaptation are not consistent with the record . . . ." (*Id.*) Finally, the ALJ concluded that the plaintiff was not disabled under the definition of the Social Security Act because there were a significant number of jobs that she could perform. (Tr. 19-20.)

The plaintiff requested review of the ALJ's decision from the Appeals Council and submitted additional medical information, including an evaluation and psychiatric/psychological impairment questionnaire completed by Dr. Charles Robins.  (Tr. 30.)  Dr. Robins diagnosed the plaintiff with persistent depressive disorder and PTSD, and estimated that these conditions would cause the plaintiff to miss work more than three times a month.  (Tr. 32-33.)  Dr. Robins also noted that psychosocial factors contributed to her condition such as poor interpersonal relationships, a history of homelessness, a history of significant trauma, and depression and anxiety brought on by poor sleeping habits.  (*Id.*)

Dr. Robins administered the Beck Depression Inventory-II, which tests levels of consciously-admitted depression.  (Tr. 32.)  He noted that the plaintiff's score of 33 on the test "indicates Claimant consciously admits to severe levels of clinical depression."  (*Id.*)  He concluded that the plaintiff's "current psychiatric conditions are significantly impairing her current level of functioning," and that her "high levels of distress and mental health concerns are also causing cognitive defects (poor concentration, short term and long term memory concerns, and attention issues)."  (Tr. 33.)  He opined that the plaintiff's symptoms and limitations apply as far back as October 2016.  (*Id.*)

On May 8, 2019, the Appeals Council denied the plaintiff's request and found that the additional evidence "does not show a reasonable probability that it would change the outcome of the decision."  (Tr. 1-6.)  The plaintiff appealed to this Court on July 6, 2020.  (ECF No. 1.)  The plaintiff and the Commissioner filed cross-motions for judgment on the pleadings.  (ECF Nos. 15, 19.)

## LEGAL STANDARD

A district court reviewing a final decision of the Commissioner must "determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machado v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002). The Commissioner's factual findings must be upheld if there is substantial evidence to support them. 42 U.S.C. § 405(g). "'[S]ubstantial evidence' is 'more than a mere scintilla.' It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"Although factual findings by the Commissioner are binding when supported by substantial evidence," courts cannot defer to the ALJ's determination "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (alteration in original) (citation and quotation marks omitted). Furthermore, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Remand "is appropriate [when] the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the application and regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (citing *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999)). "Only where the record is 'sufficiently complete' and provides 'persuasive evidence of total disability,' thus rendering further proceedings pointless, should the district court award benefits itself and remand simply for calculation of such benefits." *Id.* (quoting *Williams*, 204 F.3d at 50).

**DISCUSSION**

The plaintiff challenges the ALJ's RFC determination, and asserts he did not appropriately weigh the various medical opinions. (ECF No. 15 at 15.) In particular, she argues that the ALJ did not give sufficient weight to the opinion of her treating physician, Dr. Solomon. (*Id.* at 16.) She also challenges the ALJ's reliance on the opinion of one-time examining psychologist Dr. Miller, and on some opinions of non-examining psychologist Dr. Rozelman. (*Id.* at 20-21.) The plaintiff also argues that the ALJ did not properly evaluate her subjective symptoms. (*Id.* at 24.) Finally, she argues that remand is necessary so that new evidence can be considered. (*Id.* at 26.)

**I.     The ALJ's Determination of the Plaintiff's RFC**

An ALJ determining an applicant's RFC bases his decision "on all the relevant evidence in [the] case record," in order to determine "the most [the applicant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ relies on the RFC assessment to determine whether the applicant can either perform "past relevant work" or "any other work that exists in the national economy." *Id.* § 416.945(a)(5). "[T]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Martinez v. Colvin*, 286 F. Supp. 3d 539, 544 (W.D.N.Y. 2017) (citation omitted).

For claims filed before March 27, 2017, the ALJ must apply the "treating physician rule," 20 C.F.R. § 404.1520c(c)(2), which requires that the medical opinion of a doctor who has "an ongoing treatment relationship" with the plaintiff be given "controlling weight" as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R.

§§ 416.927(a)(2), (c)(2). "[I]f the ALJ decides the opinion is not entitled to controlling weight, [he] must determine how much weight, if any, to give it." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "In doing so, [the ALJ] must explicitly consider the following, nonexclusive *Burgess* factors: (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95-96 (quotation marks omitted) (quoting *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014)); *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). "At both steps, the ALJ must give good reasons in [his] notice of determination or decision for the weight [he] gives the treating source's medical opinion." *Estrella*, 925 F.3d at 96 (alterations, citation and quotation marks omitted). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error." *Id.* "[A] reviewing court should remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided 'good reasons' for [his] weight assessment." *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019).

In evaluating whether there is "good reason" to question a treating physician's finding, an ALJ "should not rely heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419. "This concern is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d at 98. In *Estrella*, the ALJ gave little weight to a treating physician's opinion but assigned substantial weight to the one-time examiner's opinion that the plaintiff "had mild problems maintaining attention and concentration but could follow and understand simple directions and instructions, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions." *Id.* The Second Circuit

8

held that the one-time examiner's opinion was not a basis to minimize the treating physician's opinion because the ALJ "rel[ied] on his opinion without reconciling or grappling with Estrella's fluctuating state of mental health." *Id.* (quotation marks and alterations omitted).

The ALJ gave only partial weight to Dr. Solomon's opinion. The plaintiff asserts that Dr. Solomon's opinion deserved "controlling weight," but even if it did not, it deserved the most weight of all the opinions, given his treatment relationship with the plaintiff. (ECF No. 15 at 24-25.)

As the ALJ acknowledged and the Commissioner recognizes, Dr. Solomon and the plaintiff had an ongoing treatment relationship that began in July 2017. (Tr. 17-18; ECF No. 19 at 26.) Therefore, the ALJ was required to determine first whether Dr. Solomon's opinion merited controlling weight. *See* 20 C.F.R. § 416.927(c)(2). The ALJ did not refer to the controlling weight presumption or explain why he did not give Dr. Solomon's opinion controlling weight. (Tr. 17-18.)

Moreover, the ALJ did not address the first, second, and fourth *Burgess* factors. He did not cite the frequency, length, nature and extent of Dr. Solomon's treatment of the plaintiff, the extent to which medical evidence supported his opinion, or his position as a specialist. *See Estrella*, 925 F.3d at 96 (highlighting ALJ's failure to consider physician's treatment of plaintiff over approximately five years, or fact that he "prescribed various psychotropic medications over the course of his treatment, in addition to providing monthly psychotherapy sessions").

While the ALJ discussed whether Dr. Solomon's opinion was consistent with "the record," he seems to have based his decision on Dr. Miller's opinion. Dr. Miller found that the plaintiff was "[a]lert, oriented, cooperative, and had [a] coherent and goal-directed thought process." (Tr. 17.) In concluding that Dr. Solomon's opinion was "only partially consistent with

9

the record," the ALJ wrote that the record "shows that the claimant retains a generally intact mental status with average intellectual functioning and a logical, coherent, and goal-directed thought process . . . ." (Tr. 18.) Dr. Miller was the only examiner who used this language to describe the plaintiff. (Tr. 326, 341, 397.) The ALJ did not explicitly employ the *Burgess* factor analysis, but to the extent that he relied on Dr. Miller's opinion to refute Dr. Solomon's opinion, he committed error, as Dr. Miller's "one-time snapshot of [the plaintiff's] status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d at 98.

Citing the Second Circuit's summary decision in *Guerra*, the government argues that the ALJ is not required to mention the *Burgess* factors as long as he provides "good reasons" for his assessment. (ECF No. 19 at 28.) The ALJ in *Guerra*, however, gave far more extensive reasons for his conclusion. *Guerra* 778 F. App'x at 76. There, the ALJ explained that he assigned the treating physician's opinions less than controlling weight because "they were only conclusory; they stated contradictory things; they ran contrary to the treatment records; they ran contrary to Guerra's testimony; and they were vague, of unspecified duration, and conditioned on scheduled surgical procedures." *Id.* The Second Circuit also noted that the ALJ's determination was "[s]upported by ample treatment notes, physical examination findings, and Guerra's testimony." *Id.* ALJ Noel, in contrast, did not explain why Dr. Solomon's opinion was inconsistent with the record.

The ALJ also cited the plaintiff's ability to participate in everyday activities, like "engag[ing] with a knitting group, read[ing] books, and . . . meet[ing] with state workers to examine housing options." (Tr. 18.) The fact that the plaintiff could engage in these activities, however, does not mean that Dr. Solomon's opinions about her overall functioning based on ongoing, weekly treatment are irrelevant. *See* 20 C.F.R. Pt. 404, Appendix 1 of Subpart P

10

§ 12.00(D)(3)(a) ("The fact that you have done, or currently do, some routine activities without help or support does not necessarily mean that you do not have a mental disorder or that you are not disabled."); *Scognamiglio v. Saul*, 432 F. Supp. 3d 239, 252 (E.D.N.Y. 2020) (holding that ALJ's selective focus on some statements of claimant's everyday activities "mischaracterized the majority of [her] function report"). The Second Circuit held in *Estrella* that:

> Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Estrella*, 925 F.3d at 97 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)). Dr. Solomon noted the plaintiff's fluctuations in mood, which at high points meant that she could interact socially, but at low points meant that the plaintiff's high levels of anxiety led her to avoid social interaction and ignore her hygiene. (Tr. 834-35, 846.) The ALJ focused heavily on the plaintiff's high points but did not acknowledge the lows.

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record . . . assure[s us] . . . that the substance of the . . . rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning 'little weight'" to Dr. Solomon's opinion. *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). Dr. Solomon's treatment notes reflect the plaintiff's fluctuating mental condition, which the ALJ did not acknowledge aside from commenting that "the record documents some low mood and social withdrawal." (Tr. 18.) Thus, for example, Dr. Solomon reviewed the plaintiff's journal entry: "Woke up late. I woke up feeling depressed. I felt worthless, failure, fear of never getting the life I want; some financial security; a good job; marriage (kids?). Fear feeling I'll never get well." (Tr. 809.) Dr. Solomon also reported that the plaintiff avoided seeking treatment with the shelter doctor because "based on her current emotional state at the

time, she would not have been able to handle [the] stressful experience of going to the doctor." (Tr. 846.)  At that same session, plaintiff reported that "she became more depressed and didn't want to do anything."  (*Id.*)  In his psychiatric evaluation, Dr Solomon noted that "[w]hile there has been some improvement with medication, remission is only partial as patient continues to feel amotivated, has severely disrupted sleep and difficulty completing tasks," (Tr. 514), and that, "[h]er coping style frequently results in avoidance of taking steps towards meeting stated goals."  (Tr. 797.)

      The ALJ did not "reconcile or grapple with the apparent longitudinal inconsistencies in [the plaintiff's] mental health—one of the motivations behind *Burgess*'s procedural requirement of explicit consideration of the frequen[cy], length, nature, and extent of [a physician's] treatment."  *Estrella*, 925 F.3d at 97 (last two alterations in original) (citation and quotation marks omitted).  "This failure is especially relevant here because the first *Burgess* factor, and therefore evidence supporting its satisfaction, is of heightened importance in the context of [the plaintiff's] claimed impairment: depression."  *Id.*  When viewed alongside the evidence of the apparently cyclical nature of the plaintiff's depression, the ALJ's "cherry-picked treatment notes do not provide 'good reasons' for minimalizing" Dr. Solomon's opinion."  *Id.*

      Moreover, as discussed above, the Second Circuit has "frequently 'cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination.'"  *Id.* (quoting *Selian*, 708 F.3d at 419).  "This concern is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health."  *Id.*

12

Remand is required so that the ALJ can re-evaluate the medical record and apply the *Burgess* factors.[1]

## II. The Plaintiff's Subjective Statements

The ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 15.) The plaintiff argues that "the ALJ placed undue weight on [her] sporadic activities of daily living performed

---

[1] The plaintiff also argues that in determining the plaintiff's RFC, the ALJ did not consider Dr. Solomon's opinions that the plaintiff had moderate limitations in her ability to "(1) perform at a consistent pace without rest periods of unreasonable length or frequency and (2) ask simple questions or request assistance." (ECF No. 15 at 16.) Dr. Solomon opined that the plaintiff had moderate limitations in her ability to "understand and remember detailed instructions," to "perform at a consistent pace without rest periods of unreasonable length and frequency," "ask simple questions or request assistance," "travel to unfamiliar places or use public transportation" and "make plans independently." (Tr. 444.) The plaintiff reasons that the ALJ must have accepted Dr. Solomon's opinion that the plaintiff's limitations would interfere with her ability to perform these tasks for up to a third of an 8-hour day because the questionnaire that Dr. Solomon completed defines "moderate limitations" in this manner. (*Id.*; ECF No. 15 at 16-17.)

At least one district court in this circuit has considered and rejected a similar argument. *See Brierley v. Saul*, No. 18-CV-708, 2020 WL 709609 (W.D.N.Y. Feb. 12, 2020). In *Brierley*, the plaintiff argued that the ALJ's finding that he had "moderate limitations in concentration, persistence, and pace," coupled with the VE's testimony "that a claimant who would be off task more than fifteen percent of the workday was un-employable," required a conclusion that he is disabled. *Id.* at *4. However, the court held that "[i]t is evident . . . that the ALJ did not intend her use of the term 'moderate'" to mean "up to one-third of the day." *Id.* at *5. Because the ALJ was aware of the VE's testimony yet still found that the plaintiff could perform jobs in the national economy, the court concluded that the ALJ necessarily determined that the plaintiff would not be "off task more than fifteen percent of the time." *Id.* The reasoning in *Brierley* is applicable here. ALJ Noel heard the VE's testimony that no jobs would be available for a person who could not perform tasks for a third of the workday.

Moreover, "[t]he Second Circuit has held that a moderate limitation in the area of concentration, persistence, or pace would not necessarily preclude the ability to perform unskilled work." *Lowry v. Comm'r of Soc. Sec.*, No. 11-CV-1553, 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017) (citing *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)) (collecting cases), *report and recommendation adopted*, No. 11-CV-1553, 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017). Here, the ALJ clearly accounted for the moderate limitations by limiting the type of work the plaintiff could be expected to obtain. Therefore, Dr. Solomon's opinion that the plaintiff may have moderate limitations would not be inconsistent with the ALJ's RFC determination that the plaintiff could perform simple, routine work.

for short periods of time." (ECF No. 15 at 25.) Furthermore, plaintiff argues that her statements "are well-supported by the opinions from her treating psychiatrist and the longitudinal treatment record" and that "[n]one of the activities performed by [her] conflict with her allegations of an inability to work full-time." (*Id.*)

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ may exercise his own discretion in determining "the credibility of the . . . testimony in light of other evidence in the record." *Id.* The ALJ must first determine "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* Once that is established, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (quoting 20 C.F.R. § 404.1529(a)). The factors an ALJ must consider include:

> [s]tatements [the claimant] or others make about [her] impairment(s), [her] restrictions, [her] daily activities, [her] efforts to work, or any other relevant statements [she] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings.

*Id.* (citing 20 C.F.R. § 404.1512(b)(3)). In the first step of the process, the ALJ acknowledged that the plaintiff's impairments "could reasonably be expected to cause the alleged symptoms." (Tr. 15.) However, he also determined that the "intensity, persistence and limiting effects" of the symptoms described in the plaintiff's statements are not consistent with the rest of the record. (Tr. 15.) The ALJ relied heavily on the plaintiff's ability to participate in daily social activities, like attending a knitting group or going to the library. (Tr. 16.)

14

An ALJ is required to consider the plaintiff's daily activities. *Cherry v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 658, 662 (2d Cir. 2020). The Second Circuit has ruled that an "ALJ err[s] in not giving great weight to [a claimant's] subjective evidence of her symptoms given that objective medical evidence supported her descriptions." *Gough v. Saul*, 799 F. App'x 12, 15 (2d Cir. 2020). Dr. Solomon's treatment notes support the plaintiff's subjective statements. Dr. Solomon repeatedly referenced the plaintiff's ongoing "depressed mood," (Tr. 809, 811, 820, 847, 855, 869, 876), and opined that she had "difficulty concentrating, complete social withdrawal, amotivation, [and] poor self-care." (Tr. 514). The plaintiff's "coping style frequently results in avoidance of taking steps towards meeting stated goals." (Tr. 797.) Absent further objective evidence in the contrary, the record appears to support the plaintiff's subjective statements.

On remand, the ALJ should explain the extent to which the medical record supports the plaintiff's subjective statements about her condition.

### III.  Additional Evidence to Appeals Council

The plaintiff claims that the Appeals Council erred by rejecting the report by examining psychologist Dr. Robins. (ECF No. 15 at 25-26.)

> Social Security regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting a review of an ALJ's decision. If the new evidence relates to a period before the ALJ's decision, the Appeals Council "shall evaluate the entire record including the new and material evidence submitted . . . [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."

*Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996). Evidence "must be new and material and . . . it must relate to the period on or before the ALJ's decision." *Id.* at 45. A plaintiff must also have established "good cause for failure to incorporate such evidence into the record in a prior

15

proceeding." 42 U.S.C. § 405(g). "Evidence is 'new' if the Commissioner has not considered it previously and it is 'not merely cumulative of what is already in the record.'" *Solomonson v. Berryhill*, No. 18-CV-5249, 2019 WL 6134168, at *2 (E.D.N.Y. 2019) (citation omitted). "New evidence is considered material if (1) it is 'relevant to the claimant's condition during the time period for which benefits were denied,' (2) it is 'probative,' and (3) there is 'a reasonable possibility that the new evidence would have influenced the [ALJ] to decide claimant's application differently.'" *Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 643 (2d Cir. 2007).

The evidence the plaintiff submitted is clearly new; the evaluation did not take place until after the hearing occurred. There also obviously is good cause, since it did not exist. The evidence is material; Dr. Robins opined that the plaintiff had the condition since October 2016. Finally, the evidence may very well influence the ALJ to decide the claim differently. Dr Robins's evaluation supported Dr. Solomon's conclusions, which the ALJ found were not consistent with the record.

In short, Dr. Robins's evaluation should be part of the record on remand, because it could affect the ALJ's decision.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted and the Commissioner's motion is denied.  The case is remanded for further proceedings consistent with this opinion.


**SO ORDERED.**

                                                             s/Ann M. Donnelly
                                                    _____
                                                    ANN M. DONNELLY
                                                    United States District Judge


Dated: Brooklyn, New York
       December 15, 2021